J-S10038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MITCHELL RYAN BILLS | : | |
| | : | |
| Appellant | : | No. 1160 WDA 2023 |

Appeal from the PCRA Order Entered August 29, 2023
In the Court of Common Pleas of Warren County Criminal Division at
No(s): CP-62-CR-0000387-2021

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:          **FILED: May 14, 2024**

Mitchell Ryan Bills ("Bills") appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Additionally, Bills' court-appointed counsel, Tatiana E. Malys, Esquire ("Attorney Malys"), has filed a motion to withdraw from representation and a brief styled pursuant to **Anders v. California**, 386 U.S. 738 (1967).[2] We grant Attorney Malys' motion and affirm the PCRA court's order.

_____

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] Counsel petitioning to withdraw from PCRA representation must proceed not under **Anders** but under **Commonwealth v. Turner**, 550 A.2d 213 (Pa. Super. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (collectively, "**Turner**/**Finley**"). Although **Anders** and **Turner/Finley** are close cousins, bearing similarities in that counsel is required to examine the record, present issues, and request permission to withdraw, there are also significant differences, as explained **infra**. **See Commonwealth v. Wrecks**, 931 A.2d 717, 721-22 (Pa. Super. 2007).

In August 2021, Pennsylvania State Police Troopers Corey Knepp and Joshua Tassone responded to a report from a property owner of an unknown male who had parked on his property and appeared to be passed out in his vehicle, which was still running. The male, later identified as Bills, became verbally combative as the troopers approached the vehicle and tried to wake him. Bills' speech was thick and slurred, his eyes were bloodshot and glassy, and there was an odor of alcohol coming from inside the vehicle. The troopers informed Bills he was under arrest for driving under the influence ("DUI"). Bills refused to comply with the instruction to exit his vehicle and kicked Trooper Tassone. Trooper Tassone deployed his taser to gain control of Bills. Bills continued to kick and punch both troopers. Both troopers deployed their tasers and ultimately had to tackle Bills to the ground. Bills was arrested and charged with numerous offenses following the incident.

On March 10, 2022, with the assistance of Charles Rosen, Esquire ("plea counsel"), Bills pleaded guilty to aggravated assault, DUI, and summary charges for careless driving and restrictions on alcoholic beverages.[3] The Commonwealth *nolle prossed* six additional related charges.[4] The trial court

---

[3] **See** 18 Pa.C.S.A. § 2702(a)(3); 75 Pa.C.S.A. §§ 3802(a)(1), 3714(a), 3809(a).

[4] Bills was also charged with an additional count of aggravated assault, as well as simple assault, illegally operating a vehicle without ignition interlock with a blood alcohol content above .025, illegally operating a vehicle not equipped with ignition interlock, possession of a small amount of marijuana, and harassment.

scheduled the matter for sentencing and ordered a presentence investigation report ("PSI").

On May 20, 2022, the trial court conducted a sentencing hearing. At the hearing, Bills learned that there was a discrepancy between the prior record score ("PRS") that his plea counsel had calculated and the PRS provided in the PSI. Whereas plea counsel calculated Bills' PRS as a three, the PSI indicated that it was, in fact, a five, which increased the standard sentencing range guidelines for the charges to which Bills pleaded guilty. The trial court gave Bills and plea counsel time to discuss the implications of the correct PRS and Bills did not indicate a desire to withdraw his plea. Thereafter, the trial court imposed an aggregate sentence of thirty to sixty months in prison.

Bills filed a post-sentence motion to reconsider sentence, in which plea counsel again explained his error in calculating Bills' PRS. The motion further averred that Bills wished to present mitigating factors on his aggravated assault charge; however, plea counsel was unprepared to present such evidence at the sentencing hearing due to his calculation error. The trial court denied the motion. Bills did not file a direct appeal.

On September 16, 2022, Bills filed the instant timely *pro se* petition, his first.[5] The PCRA court appointed Attorney Malys who filed an amended

---

[5] Bills had thirty days in which to file an appeal in this Court. **See** Pa.R.A.P. 903(a). As Bills opted not to do so, his judgment of sentence became final upon the expiration of time for filing an appeal on September 6, 2022. **See**
*(Footnote Continued Next Page)*

petition. In the amended petition, Bills requested leave to withdraw his guilty plea based on the ineffective assistance of plea counsel. Bills claimed that plea counsel ignored evidence of a viable defense to the criminal charges and incorrectly advised him regarding his sentencing exposure. The PCRA court conducted an evidentiary hearing at which Bills and plea counsel testified. Plea counsel explained that he made the aforementioned error in calculating Bills' PRS. *See* N.T, 8/25/23, at 17. Plea counsel testified that he advised Bills of his belief, based on the evidence, that Bills would be found guilty if he proceeded to trial. *See id*. at 26. Bills testified that he was under personal, financial, and physical stress at the time he entered his plea. *See id*. at 75. Bills indicated that he consulted a different attorney to obtain a second opinion when plea counsel informed him that he would withdraw if Bills chose to proceed to trial. *See id*. at 83. Bills stated that he hoped the Commonwealth would offer him a deal to plead guilty to a misdemeanor charge instead of a felony due to his non-violent history. *See id*. at 80. At the conclusion of the hearing, the PCRA court denied Bills' PCRA petition. Bills filed a timely notice of appeal, and both he and the PCRA court complied with Pa.R.A.P. 1925.

---

42 Pa.C.S.A. § 9545(b)(3) (providing that a judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the United State Supreme Court, or upon the expiration of time for seeking such review). Bills had one year from that date, or until September 6, 2023, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1) (providing that any petition shall be filed within one year of the date the judgment becomes final). Thus, Bills' *pro se* petition, filed on September 16, 2022, was timely filed.

Attorney Malys noted her intent to file a ***Turner***/***Finley*** brief in the Rule 1925(b) statement. In this Court, Attorney Malys filed a motion to withdraw from representation and an accompanying brief styled pursuant to ***Anders***.

At the outset of our review, we note that this case does not implicate ***Anders***. As explained above, ***Anders*** applies to direct appeals whereas ***Turner***/***Finley*** applies to PCRA cases. This Court has explained the differences between the requirements imposed by ***Anders*** and ***Turner***/***Finley***, as follows:

> ***Anders*** counsel is not permitted to withdraw unless the appeal is wholly frivolous, but ***Turner***/***Finley*** counsel is permitted to do so if the case lacks merit, even if it is not so anemic as to be deemed wholly frivolous. Also, ***Anders*** counsel must not argue against the client's interests while ***Turner***/***Finley*** counsel must do so, articulating why the client's claims have no merit.
>
> The heightened protection afforded to ***Anders*** appellants as compared to ***Turner***/***Finley*** petitioners/appellants arises because the right to counsel on direct appeal and the right to the direct appeal itself are constitutional ones. By comparison, a first-time PCRA petitioner's right to counsel is born of rule, namely Pa.R.Crim.P. 904(C), and that right does not spring from the federal or state constitutions.

***Wrecks***, 931 A.2d at 722 (citations omitted).

Because an ***Anders*** brief provides greater protection to a defendant, this Court may accept an ***Anders*** brief *in lieu* of a ***Turner/Finley*** "no merit" letter. ***See Commonwealth v. Widgins***, 29 A.3d 816, 817 n.2 (Pa. Super. 2011). However, prior to addressing the merits of the issues raised for our review, we must assess whether counsel's filings satisfy the technical requirements of ***Turner***/***Finley***. ***See Commonwealth v. Muzzy***, 141 A.3d

509, 510 (Pa. Super. 2016) (holding that "prior to addressing the merits of the appeal, we must review counsel's compliance with the procedural requirements for withdrawing as counsel").

Pursuant to **Turner**/**Finley**, independent review of the record by competent counsel is required before withdrawal on collateral appeal is permitted. **See Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009), *overruled on other grounds by* **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021) (abandoning **Pitts**'s approach as the sole procedure for challenging PCRA counsel's effectiveness). In **Pitts**, our Supreme Court explained that such independent review requires proof of:

1. A "no-merit" letter by PC[R]A counsel detailing the nature and extent of [counsel's] review;

2. The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

3. The PC[R]A counsel's "explanation," in the "no-merit" letter, of why the petitioner's issues were meritless;

4. The PC[R]A court conducting its own independent review of the record; and

5. The PC[R]A court agreeing with counsel that the petition was meritless.

**Id**. (citation and brackets omitted). Further, counsel must also send a copy of the "no-merit" letter to the petitioner, along with a copy of the petition to withdraw, and inform the petitioner of the right to proceed *pro se* or to retain new counsel. **See Wrecks**, 931 A.2d at 721. Substantial compliance with the requirements to withdraw as counsel will satisfy the **Turner**/**Finley**

criteria. ***See Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa. Super. 2003). If the brief meets these requirements, we then conduct an independent review of the petitioner's issues. ***See Muzzy***, 141 A.3d at 511.

Our review discloses that Attorney Malys has substantially complied with the above requirements. In the ***Anders*** brief, Attorney Malys detailed the nature and extent of her review of the case, listed each issue that Bills wished to have reviewed, and explained counsel's reasoning for concluding that each of the issues are meritless. ***See Anders*** Brief at 5-6, 13-17. Attorney Malys has provided this Court with a copy of a letter dated November 24, 2023, that she sent to Bills informing him of her belief that the appeal was frivolous. ***See*** Letter, 11/24/23, at unnumbered 1. Attorney Malys also advised Bills of his rights to retain replacement counsel or proceed *pro se*. ***Id***. The letter does not indicate that a copy of the petition to withdraw or a copy of the ***Anders*** brief was attached to the letter. ***Id***. However, the petition to withdraw and the ***Anders*** brief both contain a certificate of service which indicates that a copy of the document was sent to Bills on January 16, 2024. ***See*** Motion to Withdraw, 1/17/24, at 4; ***see also Anders*** Brief, 1/17/24, at 21. Thus, we conclude that Attorney Malys has substantially complied with the requirements necessary to withdraw as counsel. ***See Karanicolas***, 836 A.2d at 947. We now independently review Bills' claims to ascertain whether they entitle him to relief.

In the **Anders** brief, Attorney Malys listed the issues that Bills wished to raise, as follows:

> I.  Whether the denial of the PCRA relief was merited when Attorney Rosen failed to obtain taser documents as part of discovery, even t[h]ough . . . Bills asked Attorney Rosen to see the taser documents prior to entering a plea.
>
> II.  Whether the denial of the PCRA relief was merited when Attorney Rosen failed to inform . . . Bills of the correct [PRS] and the standard ranges applicable at his sentencing, and by doing so affect[ed] . . . Bills' possibility of entering a plea knowingly and intelligently.

**Anders** Brief at 6 (unnecessary capitalization omitted).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In both of his issues, Bills claims that plea counsel was ineffective. "A criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." **Commonwealth v. Rathfon**, 899 A.2d 365, 369

- 8 -

(Pa. Super. 2006) (citations omitted). "The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. (citation omitted). Counsel is presumed effective and the person claiming ineffectiveness must prove otherwise. *See Commonwealth v. Koehler*, 36 A.3d 121, 178 (Pa. 2012). To succeed on a claim of ineffective assistance of counsel, a petitioner must plead and prove three things: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stultz*, 114 A.3d 865, 880 (Pa. Super. 2015) (citation omitted). If the petitioner fails to meet any one of these prongs, the ineffectiveness claim fails. *See id*.

In the *Anders* brief, Attorney Malys explains that the first issue that Bills wished to raise is that plea counsel was ineffective for failing to obtain taser documents as part of discovery despite Bills' request to see the taser documentation prior to entering his negotiated plea. Bills wished to see the taser documentation because he thought it might contain favorable evidence. Bills claims that plea counsel refused to request the taser documents because, in plea counsel's opinion, the evidence of Bills' guilt was overwhelming and any attempt to deny his guilt at trial would be contradicted by the two state troopers. Bills testified at the evidentiary hearing that he would rather have entered a no contest plea, but felt pressured to enter his guilty plea because

plea counsel informed him that he would not represent Bills if he wished to proceed to a trial of the matter.

Attorney Malys indicates her belief that this issue is frivolous because, at the time of the evidentiary hearing, all of Bills' concerns regarding his plea, and whether it was made knowingly and intelligently, were addressed through testimony and argument. Attorney Malys notes that, at the evidentiary hearing, the PCRA court refused to allow the troopers to testify about the taser documents because Bills waived the right to additional discovery when he entered his guilty plea. Additionally, Attorney Malys explains that plea counsel testified at the evidentiary hearing that Bills was colloquized prior to entering his guilty plea and at his sentencing, and on both occasions confirmed that he was informed about all of the rights he would be giving up if he entered a guilty plea. In Attorney Malys' estimation, the record in the case is clear that Bills waived any additional rights he might have had regarding discovery when he entered his guilty plea.

The PCRA court considered Bills' first issue and determined that it lacked merit. The court reasoned:

> This court opines that [Bills'] underlying claim has no arguable merit as his plea did not include conduct that occurred after the taser was deployed. Thus, documentation of the taser deployment after the officer has been punched is not relevant in any way to the aggravated assault charge. [Plea] counsel effectively advised [Bills] that taser evidence in this case would not address his conduct BEFORE the taser was fully deployed.

PCRA Court Opinion, 11/22/23, at 5 (emphasis in original).

Viewing the record in the light most favorable to the Commonwealth, we conclude that the PCRA court's determination is supported by the record and legally sound. The record reflects that Bills was both driving while intoxicated and physically combative with the troopers **before** they first deployed their tasers. Bills has failed to show that the taser documentation would have been of any evidentiary value, let alone of relevance, to the criminal charges pending against him. To be sure, the taser documentation would not provide any exculpatory evidence to aid in his defense. Thus, Bills cannot show that his claim is of arguable merit. Moreover, given the overwhelming evidence of Bills' guilt and the number of charges that were *nolle prossed* as part of the plea agreement that plea counsel was able to negotiate on Bills' behalf, he has failed to demonstrate that plea counsel had no reasonable basis for recommending that Bills enter a negotiated plea. Accordingly, based on our independent review, it is clear that Bill cannot satisfy all three prongs of the test for ineffectiveness. Therefore, we conclude that Bills' first issue is meritless.

In the **Anders** brief, Attorney Malys explains that the second issue that Bills wished to raise is that plea counsel was ineffective for failing to inform him of his correct PRS. Attorney Malys explains that, at sentencing, plea counsel requested a time-served sentence based on a PRS of 3. The mistake in plea counsel's PRS calculation prompted a discussion on the record about the miscalculation as well as the correct calculation of Bills' PRS of 5. Bills claims that, due to plea counsel's mistake, he failed to inform Bills of the

correct standard range sentences applicable to his guilty pleas, and thereby affected the basis of his plea.

Attorney Malys indicates her belief that this issue is frivolous because the PCRA court concluded that plea counsel's mistake regarding the PRS calculation was dealt with properly at the time of sentencing. Attorney Malys explains that, while still on the record at the sentencing hearing, Bills was informed of the correct PRS and the correct standard range sentences applicable to the charges to which he had pled guilty. Attorney Malys points out that the PCRA court concluded that, but for the mistake made by plea counsel, the result of the sentencing would not have changed because a PRS is what it is. *Anders* Brief at 16-17 (citing N.T., 8/25/23, at 96).

The PCRA court considered Bills' second issue and determined that it lacked merit. The court reasoned:

> In the instant case the court did consider that [Bills] had a [PRS] of five and that counsel had informed him that his [PRS] was three. When counsel received the [PSI], he acknowledged he was in error and that changed the standard range from nine to 16 months to 21 to 27 months. [Plea counsel] argued at time of sentence and in the motion to reconsider that [Bills] had not been in trouble for [ten] years and had mental health issues that could be attributed to his violent response to the officers. [Bills] also was permitted to address the court[,] as well[,] and the court properly sentence[d] [him] within the standard range based upon the facts and circumstances of this case. All of those statements were addressed at the time of sentencing. The court gave [plea counsel] an opportunity to discuss the mistake in the calculation prior to sentencing so that [Bills] was aware of the changes in sentencing guidelines. At no time did [plea] counsel or [Bills] suggest that he wanted to withdraw his plea based upon the discovery that his [PRS] was a five rather than a three. Counsel was in error but he properly advised [Bills] of the correct prior

> record score prior to sentencing. . . . [Bills] appeared to acknowledge that his prior criminal history was factually accurate at the time of sentencing and the court properly sentenced him within the standard range.

PCRA Court Opinion, 11/22/23, at 8-9 (unnecessary capitalization omitted).

Viewing the record in the light most favorable to the Commonwealth, we conclude that the PCRA court's determination is supported by evidence of record and is free of legal error. The sentencing record reflects that the PCRA court accurately described plea counsel's mistake and ensured that Bills knew his correct PRS and the increased standard range sentences which would apply before Bills was sentenced. *See* N.T., 5/20/22, at 11. The sentencing record further reflects that, when informed of the correct PRS and increased penalties, Bills voiced no indication that this information altered his desire to plead guilty or that he wished to withdraw his guilty pleas. Given that Bills was informed of counsel's mistake and provided with accurate information prior to being sentenced, and made no indication that he wished to withdraw his guilty plea, Bills has not shown that he suffered prejudice from counsel's miscalculation of his PRS. Accordingly, based on our independent review, Bills cannot satisfy all three prongs of the ineffectiveness test. Therefore, his second issue is meritless.

Having found no merit to Bill's issues, we grant counsel's motion to withdraw and affirm the PCRA court's order denying Bills' petition.

Motion to withdraw granted. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/14/2024